UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

KELVIN THOMAS,
*on behalf of himself and others*
*similarly situated*,

        Plaintiff,

v.                                       Civil Action No. 3:13-cv-029

BACKGROUNDCHECKS.COM,
(in its own name and trading as
e-backgroundchecks.com)

        Defendant.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CONDITIONALLY CERTIFYING CLASSES FOR PURPOSES OF SETTLEMENT, APPOINTING CLASS COUNSEL, DIRECTING NOTICE TO THE CLASS, AND SCHEDULING FINAL FAIRNESS HEARING**

       Plaintiff, Kelvin Thomas, by counsel, submits this memorandum in support of his Motion for Preliminary Approval of Class Settlement, Conditionally Certifying Classes for Purposes of Settlement, Appointing Class Counsel, Directing Notice to the Class, and Scheduling Final Fairness Hearing.

## I.    INTRODUCTION

       This case presents a putative nationwide class action filed under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). Plaintiff's Third Amended Class Complaint names Kelvin Thomas as Plaintiff. Backgroundchecks.com (in its own name and trading as e-backgroundchecks.com) ("BGC") is joined as Defendant.[1]

---

[1] Through discovery, the Plaintiffs came to the conclusion regarding the remaining original plaintiffs – they were not members of the class that could be certified. Mr. Thomas was the only named Plaintiff to whom BGC did not send a notice pursuant to 15 U.S.C. ¶ 1681k(a)(1). None of these plaintiffs have settled their individual claims. Ms. Edwards is no longer represented by present Plaintiff's counsel. The other plaintiffs (and Ms. Edwards) have not settled their

After extensive arms'-length negotiations with a nationally-prominent mediator (as well as directly between the Parties themselves) in Atlanta, Philadelphia and by telephone, the assistance of Magistrate Judge Novak, extensive formal discovery and a thorough exploration of the Parties' claims and defenses, the Parties entered into a Settlement Agreement (the "Agreement"), a copy of which is attached to the Motion as Exhibit "1". The Settlement Agreement proposes the settlement of all claims for the putative class pleaded against Defendant in the Third Amended Class Complaint. Pursuant to Federal Rule of Civil Procedure 23, the Parties are now seeking preliminary approval of the proposed class action settlement. Specifically, the Parties request that the Court preliminarily and conditionally certify the proposed Class and the proposed class settlement by entering the proposed Order of Preliminary Approval of Class Action Settlement, a copy of which is attached to the Motion as Exhibit "2".[2]

Plaintiff submits this Memorandum in support of his Motion for Preliminary Approval of Settlement, certification of the class for purposes of settlement, and approval of the form, manner, and administration of notice. A final motion and proposed order supporting the fairness of the proposed settlement will be submitted after members of the Settlement Class have received notice and have had an opportunity to object/comment or opt-out, and prior to the Court's Final Approval Hearing. For the reasons set forth in detail below, the proposed settlement is reasonable, fair, and adequate, and it should be approved by the Court.

## II.   THE CLAIM TO BE SETTLED

### A.   Count I – Claim Under 15 U.S.C. § 1681k(a).

---

individual claims. They have not negotiated their individual claims. Instead, in order to avoid any appearance of impropriety, those plaintiffs still represented by putative class counsel have unconditionally agreed to the dismissal without prejudice and will not negotiate to determine if they can avoid refilling an individual accuracy case, until after this class case is resolved.

[2] All capitalized terms used herein have the meanings set forth in this memorandum or in the Agreement.

On January 11, 2013, Tyrone B. Henderson, Sr., Kelvin Thomas, and Ronald Johnson filed an action styled as *Henderson, Thomas, et al. v. Backgroundchecks.com*, Civil Action No. 3:13-cv-029 in the United States District Court for the Eastern District of Virginia, alleging that BGC failed to comply with several provisions of the federal Fair Credit Reporting Act ("FCRA"). On February 12, 2015, Kelvin Thomas filed a Third Amended Complaint, alleging that BGC violated the FCRA, 15 U.S.C. § 1681k(a)(1).

The FCRA, in 15 U.S.C. § 1681k(a), sets forth procedures that a CRA must follow when reporting "items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment." *Id.* In particular, in such circumstances, a CRA shall:

> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

*Id.* The provisions of Section 1681k(a) are disjunctive, thereby allowing a CRA to comply with either subsection to avoid liability. *See id.*

Plaintiff alleges that Defendant failed to mail him notice when it furnished consumer reports to his employers or prospective employers, claiming that such practice was uniform and in violation of Section 1681k(a). (Third Am. Compl., ¶¶ 31–41, 58.) In discovery, Plaintiff learned that Defendants' practice had been to essentially elicit a "yes" or "no" response from its employer clients to state whether or not they intended to take adverse action based on that report.

BGC would then only send the § 1681k(a)(1) notice if the employer certified "yes", it did intend to take an adverse action based on the report. Defendant defended this process as FCRA-compliant. Plaintiff contended that it was unlawful because that process did not provide notice to the consumer "at the time" the report was furnished to the employer, and because it depended upon a third party trigger that was often inconsistent or lacking.

**B.    Damages Issues.**

Liability under the FCRA is not strict and only arises upon a finding of negligence or willful failure to comply. 15 U.S.C. §§ 1681n & 1681o. Further, unless there is a finding of a willful noncompliance, Plaintiff (and thus the Class) must establish actual damages. Statutory and punitive damages are *only* available where there is a finding of a willful violation. *See id.* As such, either the Class must proceed on a uniform "actual damages" claim, or it must pursue statutory and punitive damages under the more challenging "willfulness" standard of Section 1681n. In this case, Plaintiff has alleged both remedies, seeking damages for negligent violations and for willful ones. Plaintiff's path to negligence damages was multifold. He alleged that the Court could and should certify a class on liability only, and then provide notice to class members so that they would have been able to attempt to prove their damages individually in their own later cases, or in a consolidated trial.

Alternately, Plaintiff pressed the claim for a willfulness remedy seeking statutory damages as a proxy for actual damages. See e.g. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (Finding statutory damages an appropriate class remedy to overcome the manageability difficulties of compensable damages for consumers whose individual losses "are likely to be small—a modest concern about privacy, a slight chance that information would leak out and lead to identity theft.")

This class claim, detailed above, asserts that Defendant negligently and willfully violated the FCRA and seeks the recovery of actual, statutory and punitive damages on that basis. In *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69 (2007), the Supreme Court considered the standard for whether a defendant "willfully" violates the FCRA, including whether willfulness also includes "recklessness." *Id.* at 52. While it held that the former encompassed the latter, the Court also concluded that this willfulness standard is not met "unless the action is not only a violation [of the FCRA] under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. To overcome this hurdle, it is the plaintiff's burden to prove that a defendant's attempts to comply with the FCRA were "objectively unreasonable." *Id.*

For the reasons set forth above, Defendant denies liability under the FCRA.[3] However, to the extent that any violations of the FCRA were found, Defendant further denied that any such violations were the result of negligent or willful misconduct.

### III. The Lengthy Mediation of the Dispute.

On January 11, 2013, Tyrone B. Henderson, Sr., Kelvin Thomas, and Ronald Johnson filed an action styled as *Henderson, Thomas, et al. v. Backgroundchecks.com*, Civil Action No. 3:13-cv-029 in the United States District Court for the Eastern District of Virginia, alleging that BGC failed to comply with the federal Fair Credit Reporting Act ("FCRA"), specifically 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681g(a), and 15 U.S.C. § 1681k(a), when it either prepared criminal background reports for prospective employers or received file disclosure requests. On March 25, 2013, BGC filed its Motion to Strike or, in the Alternative, Dismiss Claims of

---

[3] Likewise, Defendant denied that the case was capable of class certification. Even apart from contested issues of liability and willfulness, therefore, the Parties would have engaged in a protracted legal battle over whether the case was capable of certification in the first instance.

Plaintiff Tyrone B. Henderson, arguing that the Complaint lacked sufficient factual allegations to make Mr. Henderson a member of the proposed classes. On April 8, 2013, Plaintiffs Tyrone B. Henderson, Sr., Kelvin Thomas, Ronald Johnson, and Pamela Edwards filed their First Amended Class Complaint, rendering BGC's motion moot. On April 30, 2013, plaintiffs filed their Second Amended Class Action Complaint. BGC and Plaintiffs completed substantial discovery, including written discovery, document production, depositions, and third-party discovery.

The Parties extensively discussed the possibility of settlement in this matter, as well as simultaneously engaging in targeted discovery. A brief summary of that discovery and eventual settlement process follows.

On August 19, 2013, the parties to the Litigation agreed to stay all deadlines in the case to pursue private mediation. Immediately the Parties' counsel began to discuss process for mediation and potential settlement obstacles. Between November 11, 2013 and June 23, 2014, the parties conducted three arms'-length, contentious, lengthy, and complicated in-person mediation sessions with a nationally known private mediator, Rodney Max. During the last mediation session, the Parties agreed to settle the case in principle. Nearly all of the Plaintiff's team of multiple law firms participated. Multiple Defense attorneys also attended. The owner and the General Counsel of the Defendant attended and participated. And at least several insurance carriers, and respective adjustors and attorneys attended.

On June 23, 2014, the Parties conducted a third in-person mediation session with Mr. Max at the offices of Reed Smith LLP in Philadelphia, Pennsylvania. During this session, the Parties reached an agreement in principal to settle the case, but did not finalize the terms of the settlement.

After the long and tedious detailing of the primary and material terms of settlement, the Parties shook hands and began to negotiate the documentation of the settlement. On August 22,

2014, the Court referred the case to United States Magistrate Judge David Novak, who supervised the completion of the negotiation of the Settlement Agreement. The Parties worked through Judge Novak to complete the negotiation of the Settlement Agreement, which is the subject of this motion. On February 12, 2015, Plaintiff Kelvin Thomas filed the Third Amended Class Action Complaint. On February 13, 2015, the Plaintiff filed the executed Settlement Agreement.

**IV.    The Proposed Settlement of the Class Claim.**

**A.    The Settlement Class.**

Under the Settlement Agreement, the Parties agreed to resolve the claims of the Class of persons defined as follows (the "Settlement Class"):

> All natural persons residing in the United States, any U.S. territory, the District of Columbia, or Puerto Rico who were the subject of one or more consumer reports that BGC prepared and furnished directly to an end-user for its employment purposes during the period from January 11, 2011 to August 31, 2014, which report or reports contained one or more criminal offense records, where BGC neither (a) sent the person a notice pursuant to FCRA § 613(a)(1) [15 U.S.C. § 1681k(a)(1)] nor (b) as a matter of procedure, obtained the records from or confirmed the records with a government body (either directly or through others) after receiving the request for the report and before furnishing the report. Excluded from the Class are any officers, directors, or employees of, any consumer who has previously released his or her claims against BGC, and the Judge overseeing this action.

For preliminary settlement purposes, Plaintiff Kelvin Thomas is to be appointed as the Class Representative on behalf of the Class Members, and undersigned Plaintiff's counsel are to be appointed as Class Counsel for the Class Members.

Based on the records maintained by BGC, the Settlement Class is expected to consist of approximately 430,000 separate consumers.

**B.    The Consideration Provided To The Settlement Class Under The Settlement Agreement.**

Plaintiff achieved the proposed settlement, which would be at least one of the seven largest FCRA class settlements in the history of the statute, in the face of substantial merits and Rule 23 defense leverage. In addition, the company itself is closely held and with modest assets. The result was that the settlement focused on a structure that marshaled resources to compensate class member who attested that they had suffered actual damages.

To offset this limitation, Plaintiff was able to extract substantial additional non-monetary consideration terms. As BGC is a large and market-dominant CRA, it is likely that most class members who change jobs more than a few times or apply to multiple employers will again come in contact with BGC. Accordingly, the process changes to BGC's FCRA compliance will have a direct benefit on many class members. Even beyond BGC reports, the changes will set the new bar for the industry.[4]

All class members will be eligible to receive these and the other non-monetary benefits of the settlement. However, even while receiving these benefits, a class member will be permitted to exclude their actual damage remedy and claim from settlement

1. **Cash Claims Fund.**

The Settlement Agreement requires Defendant to pay $18 million into a Settlement Fund for the benefit of the Settlement Class, and it therefore provides a substantial monetary recovery for the Settlement Class. A common fund in the amount of $18,000,000 will be created. This fund will pay the Settlement Administrator and the costs of the class notice and administration, as well as attorney's fees and costs and the class representative service award.

The remaining funds will be divided between the **Reputational Injury Fund** and the **Inaccuracy Injury Fund**. Consumers who believe that they have been damaged by a BGC report will be able to submit a standardized claim form certifying that they seek to obtain a

---

[4] In fact, the changes negotiated to BGC's procedures have already been used as a compliance target in unrelated FCRA litigation against BGC competitors.

payment from either the Reputational Injury Fund or the Inaccuracy Injury Fund.  By design, Reputational Injury Fund claims will be at a lower proof/attestation threshold than the Inaccuracy Injury Fund.  And the recovery ratio of the two funds will always be at least 2:1 in favor of the Inaccuracy Injury Fund.

In addition, the Settlement will permit class members to stay in the settlement in order to obtain the non-monetary benefits, but also affirmatively exclude their actual damage claims from the settlement release simply by sending a form requesting to do so.  This will permit class members who believe that they have inordinately large actual damage claims to preserve same for their individual litigation outside this case.

The **Reputational Injury Fund** is available to class members who can attest: (1.) the class member had no criminal history that would have prevented the employer from hiring him or her at the time that BGC prepared the background check, and (2.) the class member suffered reputation injury because of BGC's report.

In the alternative, the **Inaccuracy Injury Fund** is available to class members who can attest: (1.) the background check furnished by BGC to the employer-included information about the class member that was inaccurate, incomplete, or out-of-date, and (2.) as a result, the class member suffered damage in a specifically described and detailed way, such as a specific employment injury.

After the class members have submitted their claim forms, distributions will be made using the following formula:

> a.  Class Members who certify that they are entitled to a Reputational Injury Payment and submit a valid claim form will receive the **greater** of either (a) 100% of the Net Settlement Fund divided by the sum of (i) the number of Reputational Injury Members plus (ii) five times the number of Inaccuracy Injury Members; or (b) the **lesser** of either

(i) one third of the Net Settlement Fund divided by the number of Reputational Injury Members, or (ii) 100% of the Net Settlement Fund, divided by twice the total number of Settlement Class Members whose Claim Form the Settlement Administrator has accepted.

b.       Class Members who certify that they are entitled to an Inaccuracy Injury Payment and submit a valid claim form will receive the remainder of the Net Settlement Fund after the clearing of all checks that Reputational Injury Members timely deposited or cashed, with that remainder then divided by the number of Inaccuracy Injury Members.

Using these ratios, on a *pro rata* basis, ***assuming a ten percent claims rate***, ***and with ten percent of claimants reaching the inaccuracy threshold***, the **Reputational Injury Payment** would pay a **net of $201.24** per claimant and the **Inaccuracy Injury Payment would pay a net of $1,006.22** per claimant. If the claims rate is still ten percent, but **twenty percent of claimants reached the inaccuracy threshold, the Reputational Injury Payment would pay a net of $156.53** per claimant **and the Inaccuracy Injury Payment would pay a net of $783.00** per claimant.

## 2.       Free Copies of Historical and Current Consumer Reports.

In addition to this monetary consideration, each Class Member will have the opportunity to receive both (1) a historical copy of the Class Member's consumer report, in addition to the identity of the end-user to whom the report was provided, and also (2) a copy of his or her current consumer report with the form and content of a report that BGC would provide in its US OneSEARCH to an employment-purpose end-user.

## 3.       Expedited Dedicated Dispute Process.

The Settlement also creates an extra-FCRA dispute process to permit class members the opportunity to make a dispute directly with BGC's consumer relations department with a set of

contact methods dedicated solely to class members and staffed by live agents. The expedited

dispute form provided to class members will also inform them that Settlement Class Counsel is

available to assist them with their dispute.

For class members that use the form that BGC provides to expedite these disputes,

average completion with be within ten business days and 99% completion within fifteen business

days. Under the FCRA, the dispute process is permitted to take between 30 and 45 days. 15

U.S.C. § 1681i.

## 4.    BGC's FCRA Compliance Procedures Changes

BGC has agreed to several changes in its policies and procedures regarding the provision

of background checks. Specifically:

1)      At the time of the Plaintiff's report, BGC's web site had a feature under which it did not send a notice under 15 U.S.C. § 1681k(a)(1) when the user viewed a criminal record from BGC's criminal history database and affirmed that either (1) the records found did not match the consumer (for example, when a photograph did not match) or (2) the records would not result in an adverse effect on the consumer's ability to obtain employment. BGC has removed this feature, so that BGC now attempts to send such notice regardless of the user's statement when 15 U.S.C. § 1681k(a) requires.

2)      At the time of the Plaintiff's report, BGC's web site allowed an employment-purposes end-user to select criminal records for which BGC had no date of birth to be included in the report if the record had at least some address information, a photograph, or both to be used for matching the record to the consumer. BGC has changed this process, so that BGC will remove records with no date of birth from this record-selection process.

3)      At the time of the Plaintiff's report, BGC's web site allowed an employment-purposes end-user to select criminal records for which BGC had a partial date of birth to be included in the report. BGC has changed this process, so that BGC will remove records with partial dates of birth from this record-selection process unless the client positively requests records with partial dates of birth and the record has at least some address information, a photograph, or both.

4)      BGC has enhanced its web site to include, in any employment-purposes report to an end-user that includes a criminal record from its criminal database for which only a partial date of birth is available, a statement to the effect that BGC matched the record based on a partial date of birth. Nothing in this Settlement Agreement prohibits BGC from adding additional statements about matching criteria, including a statement to the

effect that BGC is displaying the record based on additional matching identifiers, such as the end-user's confirmation that a photograph matches the subject of the report.

5)      BGC will enhance its web site to more strictly prevent criminal records from appearing in employment-purposes end-user reports that do not include all of the following: offense, disposition (which may include that the criminal case is pending), and disposition date (unless the criminal case is pending). BGC will complete this feature no later than June 30, 2015.

6)      BGC will enhance its web site to attempt to identify recent criminal records indicating that the subject of the record is currently incarcerated, and to exclude the identified criminal records for reports where the client indicates that work state will be a state other than the state of incarceration. BGC will complete this feature no later than June 30, 2015.

7)      BGC will enhance its web site to allow a person procuring a report for resale to apply to the report the same matching and filtering logic that BGC applies to its own end-user reports. This paragraph applies only to a report if (1) BGC sells the report to someone who states that it will resell the report, (2) the report is a consumer report, and (3) the report is for employment purposes. BGC will complete this feature no later than June 30, 2015.

8)      BGC will enhance its web site (1) to require that a reseller indicate whether the reseller will assure a report's compliance with 15 U.S.C. § 1681k(a) through compliance with 15 U.S.C. § 1681k(a)(1), through compliance with 15 U.S.C. § 1681k(a)(2), or through compliance with both, and (2) if compliance is through 15 U.S.C. § 1681k(a)(1) only, to apply to the report the same matching and filtering logic that BGC would apply to its own end-user reports. This paragraph applies only to a report if (1) BGC sells the report to someone who states that it will resell the report or use the report to prepare its own report, (2) the report is a consumer report, (3) the report is for employment purposes, and (4) the reseller states that either (i) that it is a consumer reporting agency for the report that it resells or that it prepares based on BGC's report or (ii) that it will resell BGC's report to someone who is a consumer reporting agency for the report that it resells or that it prepares based on BGC's report. BGC will complete this feature no later than July 31, 2015.

This non-monetary consideration is substantial and will prevent future harm to not only the Settlement Class Members, but to thousands of non-class members as well.

## C.      The Required Class Action Fairness Act Notice.

BGC will cause notice of the proposed settlement to be served under the Class Action Fairness Act of 2005 ("CAFA").  28 U.S.C. § 1715.  The CAFA Notice will be sent to the Attorney General of the United States and to the attorneys general of all states and the District of

Columbia and all U.S. territories. The CAFA Notice will be sent within ten days after the filing of the Settlement Agreement with the Court. To account for the deadlines under governing law, the Parties request that the Final Approval Hearing be scheduled no earlier than 120 days from the date of the mailing of the CAFA Notice.

**D.      Attorneys' Fees and Expenses; Service Awards.**

To best represent the Class's interests, the Parties exclusively focused on achieving a settlement and did not negotiate or even address the issue of service awards, attorneys' fees or expenses before reaching agreement on all material settlement terms.   Accordingly, the Settlement Agreement provides that:

> No fewer than 10 days before the deadline for objections and opt-out requests, Settlement Class Counsel shall file a request to the Court for reimbursement from the Settlement Fund of attorney's fees (including expert witness fees, court costs, and any other expenses) incurred in connection with the Litigation (the "Attorneys' Fees"). Settlement Class Counsel shall not request more than 30% of the total Settlement Fund. BGC does not and shall not oppose such a request, and agrees that the amount awarded by the Court may be paid from the Settlement Fund. To the extent the Court approves an award of Attorneys' Fees in an amount less than the above amount, the difference will remain in the Settlement Fund.
>
> This Settlement Agreement is not conditional on the Court's approval of Attorneys' Fees in the requested amount or in any amount whatsoever. The Parties shall request the Court to consider them separately from the fairness, reasonableness, and adequacy of the Settlement Agreement. The Court's ruling on the request will not terminate or cancel the Settlement Agreement or give the Plaintiff or Settlement Class Counsel a right or option to do so.

(Ex. 1, Settlement Agreement  §§ 10.1.1 and 10.1.2).

Plaintiff will also apply for a service award for his role as Class Representative to compensate him for his efforts in prosecuting this case including retaining counsel, assisting in discovery, and keeping abreast of the litigation. Defendant has agreed not to oppose the application for the service award, which will be sought in the amount of $5,000.

**E.      *Cy pres* Award.**

To the extent there are funds remaining in the Settlement Fund after all checks have been mailed to Class Members who did not opt-out of the settlement and the time period to cash the distributed settlement checks has expired, and after the disbursements have been made from the Settlement Fund, the Parties will first endeavor to distribute remaining funds to class members. If it is cost prohibitive to do so, any remaining Settlement Funds shall be provided to a *cy pres* beneficiary. The Parties will ask the court to approve such a *cy pres* award to GOODWILL, to use the funds for programs to assist individuals with criminal records in finding employment, for example, through its existing Transitional Employment Opportunity (TEO) program.

**F. Exclusions and Objections.**

Any Class Member who desires to be excluded from the class must send a written request for exclusion to the Settlement Administrator postmarked no later than forty-five (45) days after the Notice Date. Likewise, any Class Member who has not previously opted-out may appear at the Final Fairness Hearing to argue that the proposed Settlement should not be approved and/or to oppose the application of Class Counsel for an award of attorneys' fees and costs and the service award to Plaintiff; provided, however, that no individual within the Settlement Class shall be heard, and no objection may be considered, unless the individual files with this Court his or her written objection and intent to appear not later than forty-five (45) days after the Notice Date and mails the same on Class Counsel and Defense Counsel so that it is postmarked no later than forty-five (45) days after the Notice Date. To be effective, an objection must contain: (a) the objecting Settlement Class Member's name, address, and telephone number; (b) the name of this Litigation and the case number; (c) a statement of each objection; and (d) a written brief detailing the specific basis for each objection, including any legal and factual support that the objecting Settlement Class Member wishes to bring to the Court's attention and any evidence the objecting Settlement Class Member wishes to introduce in support of the objection. In addition,

an objection submitted through an attorney must contain: (a) the identity and number of the Settlement Class Members represented by objector's counsel; (b) the number of such represented Settlement Class Members who have opted out of the Class; and (c) the number of such represented Settlement Class Members who have remained in the Settlement Class and have not objected.

The Settlement Administrator will send the notice to the class members within the later of 60 days after Preliminary Approval or 30 days after the Historical Report Portal Opening. The Settlement Administrator will also provide a list of the names of each Class Member who submitted a timely exclusion after the established deadline passes. A copy of that list will be filed with the Court along with the Parties' Joint Motion for Final Approval of Class Action Settlement.

## V.    ARGUMENT

### A.    Elements of Certification for Settlement Class.[5]

There is a strong judicial policy within this Circuit favoring resolution of litigation prior to trial. *See, e.g., S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts.") (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)). Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources. As the court in *Stone* observed:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

---

[5] It is understood and agreed by the Parties that if the Settlement Agreement is not consummated pursuant to the terms set forth therein, the certification of the Settlement Class shall be void, and Defendant shall be deemed to have reserved its respective rights to oppose any and all class certification issues.

749 F. Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)).

Rule 23 permits courts to preliminarily certify a class for purposes of effectuating a settlement of the case. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 793-94 (3rd Cir. 1995) (collecting cases and authority). A court may grant preliminary approval of a class action where the class proposed for settlement satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), as well as one of the three subsections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). If the Court determines a settlement class should be certified, the Court must then follow a three-step process prior to granting final approval of a proposed settlement. *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000).

First, the Court must preliminarily approve the proposed settlement. *Id.* at 547. Second, members of the class must be given notice of the proposed settlement. *Id.* Third, a final fairness hearing must be held, after which the Court must decide whether the proposed settlement is fair, adequate, and reasonable to the class as a whole, and consistent with the public interest. *Id.* This protects the class members' procedural due process rights and enables the Court to fulfill its role as the guardian for the classes' interests. *Id.* Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.*

**B.      Consideration of the Rule 23(a) And Rule 23(b) Elements.**

Rule 23 governs the certification of class actions. In considering a settlement at the preliminary approval stage, the first question for the Court is whether a settlement class satisfies the requirements set forth in Rule 23, and thus may be conditionally certified for settlement

purposes. Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and/or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, Rule 23(c)(5) expressly authorizes the division of a class into subclasses, as the settlement proposes here in one instance. Subclasses are "each treated as a class under this rule" and therefore must each meet the class certification requirements. Fed. R. Civ. P. 23(c)(5). Here, the Parties have reached a proposed agreement on behalf of the Settlement Class, which should be certified.

### 1.    The Class Meets all Rule 23(a) Requirements.

#### a.    Numerosity.

"There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied." *Kelly v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978). In applying that rule, courts have consistently held that joinder is impracticable and numerosity is satisfied where the class is composed of hundreds of potential claimants; indeed, numerosity has been deemed sufficient as to classes with fewer than 50 members. *See, e.g., Cypress v. Newport News Gen. and Non-Sectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (a class of 18 members met numerosity requirement); *Jeffreys v. Communic'n Workers of Am.*, 212 F.R.D. 320, 322 (E.D. Va. 2003) ("where the class numbers twenty-five or more, joinder is generally presumed to be impracticable").

Here, numerosity is not an issue. As detailed above, there are over 430,000 members in the Class. This number is sufficient to establish that joinder is impracticable.

#### b.    Commonality.

Commonality requires that there be at least one question of law or fact common to the members of the class. *Jeffreys*, 212 F.R.D. at 322. And, "the fact that there are some factual variances in individual grievances among class members does not defeat commonality." *Morris v. Wachovia Secs., Inc.*, 223 F.R.D. 284, 292 (E.D. Va. 2004) (citations omitted).

Here, by definition, members of the Settlement Class share multiple questions of law and/or fact. The Settlement Class Members are alleged to be the subject of procedures whereby Defendant, in violation of the FCRA, did not provide consumers timely notice when Defendant provided their consumer reports for employment purposes. The procedures at issue with respect to this claim are identical. The theories of liability as to all Settlement Class Members therefore arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class. *See* Fed. R. Civ. P. 23(a).

### c. Typicality.

In order for Rule 23's typicality requirement to be met, a named plaintiff "may proceed to represent the class only if the plaintiff establishes that his claims or defenses are 'typical of the claims or defenses of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing FED. R. CIV. P. 23(a)(3)). Typicality is satisfied as long as the plaintiff's claim is not "so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id.* at 466-67.

Plaintiff's claims arise from Defendant's practices concerning the provision of consumer reports for employment purposes. As discussed in the previous section, these are the same claims advanced on behalf of the Settlement Class Members, and Plaintiff is a member of the settlement class. Plaintiff's claims thus rest on the same legal and factual issues as those of the class members. That is the hallmark of typicality. *See Deiter*, 436 F.3d at 466 (citing Fed. R. Civ. P. 23(a)(3)).

### d. Adequacy of Representation.

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class. That protection involves an analysis of two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the class. *See*, *e.g., Mitchell-Tracey v. United Gen. Title Ins.*, 237 F.R.D. 551, 558 (D. Md. 2006) (citing *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 499 (D. Md. 1998)).

Plaintiff fairly and adequately represents the interests of the Settlement Class. He has retained experienced attorneys to represent him. His attorneys have substantial experience in both class action and FCRA litigation. Moreover, Plaintiff has no interests antagonistic to the interests of the Settlement Class and is unaware of any actual or apparent conflicts of interest between him and the Settlement Class.

When Class Counsel negotiated the settlement in this case, they made it their first priority to achieve the best possible outcome for the Class. This Court has recognized the advantages that experienced counsel with an expertise in both the factual and legal issues in a case present to both the parties and to the docket. *See S.C. Nat'l Bank*, 139 F.R.D. at 339 (concluding fairness met where settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience in the area of securities law).

Class counsel have extensive collective experience in both consumer protection and class action litigation, having been involved in now numerous, large consumer class actions where they have been found to be suitable Class Counsel, particularly in this District. *See, e.g.*, *Souter v. Equifax Info. Servs., LLC,* 3:10CV107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) ("[T]he Court finds that Soutter's counsel is qualified, experienced, and able to conduct this litigation.

Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases."); *See also Williams v. Lexis-Nexis Risk Mgt.*, No. 3:06cv241 (E.D. Va. 2008); *Beverly v. Wal-Mart*, No. 3:07cv469 (E.D. Va. 2007); *Cappetta v. GC Servs., Inc.,* No. 3:02cv288 (E.D. Va.); *Ryals v. HireRight Sols. Inc.,* No. 3:09CV625 (E.D. Va.), *Daily v. NCO,* No. 3:09CV031 (E.D. Va. 2011); *Conley v. First Tennessee,* No. 1:10CV1247-TSE (E.D. Va., Judge Ellis)*; ("*THE COURT: All right. Again, I wish that more would settle as quickly and as sensibly and as economically as you-all have settled this.  Thank you.  MR. ERAUSQUIN: Thank you, Judge. THE COURT: And the thank you comes not from me personally, but from the system, from the judiciary. We're tied up with lots of class actions, lots of squabbling, and it's refreshing to see one resolved so promptly.") *Lengrand v. Wellpoint,* No. 3:11CV333-HEH (E.D. Va.); *Henderson v. Verifications Inc.,* No. 3:11CV514-REP (E.D. Va. 2013); *Pitt v. K-Mart Corp*, 3:11CV697; *White v. Experian,* 8:05-cv-01070(C.D. Cal.); *Teagle v. LexisNexis Screening Solutions, Inc.* (formerly "Choicepoint"); *Berry v. LexisNexis Risk & Information Analytical Group*, 3:11cv754 (E.D. Va.).

**2.     The Class Likewise Satisfies the Rule 23(b)(3) Considerations.**

The proposed settlement contemplates a class certification permitting opt-outs pursuant to Rule 23(b)(3).  An action may be maintained as a class action if the four Rule 23(a) elements described above are satisfied, and in addition, "the Court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

**a.     Predominance.**

If the Settlement Class is to be certified under Rule 23(b)(3), the common issues of law and/or fact shared by the Settlement Class Members must "predominate" over individual issues.

Rule 23(b)(3)'s predominance inquiry focuses on whether the proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004); *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 142 (4th Cir. 2001). This criterion is normally satisfied when there is an essential, common factual link between all class members and the defendants for which the law provides a remedy. *Talbott*, 191 191 F.R.D. 99, 105 (W.D. Va. 2000) (citing *Halverson v. Convenient FoodMart, Inc.*, 69 F.R.D. 331 (N.D. Ill. 1974)). And, predominance exists where the resolution of class members' individual claims depends on examining common conduct by a defendant. *Jeffreys,* 212 F.R.D. at 323 (finding predominance because class members' claims were based on same acts by defendant and the determinative "question in each individual controversy" was common).

The predominance requirement is satisfied here because the essential factual and legal issues regarding the Settlement Class Members' claims are common, and relate to alleged standardized procedures. *Talbott*, 191 F.R.D. at 105 ("Here, common questions predominate because of the standardized nature of [defendant's] conduct."). Nothing more is required to satisfy predominance.

### b. Superiority.

Finally, the Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3). The factors to be considered here in determining the superiority of the class mechanism are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability.[6] *Hewlett v.*

---

[6] A trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23. *Amchem*, 521 U.S. at 620. Therefore, this criterion is not material to the Court's analysis in this posture.

*Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); *accord Newsome v. Up To Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004).

Efficiency is the primary focus in determining whether a class action is indeed the superior method of adjudicating the controversy. *Talbott*, 191 F.R.D. at 106. In examining these factors, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 (7th Cir. 1974).

In *Jeffreys*, for instance, the court found that because "the facts and issues involved are identical for all class members, class members have little incentive and few resources to pursue litigation on their own, the class members are dispersed over several states, and there are few manageability concerns, the class action is the best method of resolving the matter." 212 F.R.D. at 323. The same is true here. Common issues predominate in the Settlement Class. Further, the individual claims of the members of the Settlement Class are small, thus providing little incentive for individual litigation, and the members of the Settlement Class are dispersed across the country. *See also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997)).

A class action in this case is superior to other available methods for the fair and efficient adjudication of the case because a class resolution of the issues described above outweighs the difficulties in management of separate, individual claims and allows access to the courts for those who might not gain such access standing alone, particularly in light of the relatively small amount of the damage claims that would be available to individuals. Moreover, apart from the

fact that the settlement allows a recovery of actual damages, certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit. Thus, both predominance and superiority are satisfied. Accordingly, the Court should conditionally certify the Settlement Class for settlement purposes.

### C. The Settlement Is Appropriate For Preliminary Approval.

The primary concern for the Court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). At the preliminary approval stage, the Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. *See* Fed. R. Civ. P. 23(e)(2); *see also* Manual for Complex Litigation (Fourth) ("MCL"), § 21.632 (4th ed. 2004).

The Fourth Circuit has bifurcated this analysis into consideration of the fairness of settlement negotiations and the adequacy of the consideration to the class. *In re Jiffy Lube*, 927 F.2d at 158-59. However, at the preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval." *Horton v. Merrill Lynch, Pierce, Fenner & Smith,* 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citing *In Re Mid-Atlantic Toyota Antitrust Litigation,* 564 F. Supp. 1379, 1384 (D. Md. 1983)). This settlement is, warranting approval.

### 1. The Settlement Is Fair.

The Fourth Circuit has set forth the factors to be used in analyzing a class settlement for fairness: (1) the posture of the case when the proposed settlement was reached; (2) the extent of discovery conducted; (3) the circumstances surrounding the settlement negotiations; and (4) counsel's experience in the type of case at issue. *Jiffy Lube*, 927 F.2d at 158-59.

The proposed settlement in this case was reached only after the following events, each of which independently supports the conclusion that the posture of the action and the discovery conducted is such that the proposed settlement is fair:

- Substantive briefing, including on motion to dismiss;

- Plaintiff's review of thousands of pages of documents provided by Defendant, as well as the reciprocal review of all of Plaintiff's documents by Defendant;

- Discovery from critical fact witnesses (including non-party witnesses);

- The exchange of information in discovery regarding merits and class certification issues, including Defendant's responses to the targeted questions posed by Plaintiff.

This action has been vigorously litigated by the Parties and sufficient discovery has been obtained by both Plaintiff and Defendant to assess the strength of their respective claims and defenses.

Further, since August 2013, the Parties have conducted arms'-length, contentious, and complicated negotiations with a private mediator and/or with counsel for the Parties. Courts have found that, where a settlement is the result of genuine arms'-length negotiations, there is a presumption that it is fair. *See*, *e.g.*, *City P'ship Co. v. Atlantic Acquisition Ltd. P'Ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Consequently, the circumstances surrounding the Parties' settlement negotiations support a finding that the settlement is fair.

Finally, Plaintiff's counsel is highly experienced in consumer class action litigation, and they endorse the settlement as fair and adequate under the circumstances. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See*, *e.g.*, *In re MicroStrategy*, 148 F. Supp. 2d at 665.

### 2. The Settlement Terms Are Adequate And Reasonable.

In an analysis of the adequacy of a proposed settlement, the relevant factors to be considered may include: (1) the relative strength of the plaintiff's case on the merits; (2) any difficulties of proof or strong defenses the plaintiff would likely encounter if the case were to go to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendant and the probability of recovery on a litigated judgment; (5) the degree of opposition to the proposed settlement; (6) the posture of the case at the time settlement was proposed; (7) the extent of discovery that had been conducted; (8) the circumstances surrounding the settlement negotiations; and (9) the experience of counsel in the substantive area and class action litigation. *See In re Jiffy Lube*, 927 F.2d at 159.

While Plaintiff's counsel firmly believe in the merits of Plaintiff's claims, demonstrating liability on the FCRA claims at issue is not at all a certainty. As noted above, liability under the FCRA is not strict and only arises upon a finding of negligence or willful failure to comply. 15 U.S.C. §§ 1681n and 1681o. Defendant contested liability in all regards. Further, unless there is a finding of a willful noncompliance, Plaintiff (and thus the Class) must establish actual damages. Consequently, absent approval of the settlement, Plaintiff will be put to challenging proofs, including as to issues of willfulness, and all Parties face the prospect of a long and expensive litigation which will likely culminate in a trial on a class-wide basis and, thereafter, a lengthy appeal (not to mention the likelihood of a requested interlocutory appeal relating to class certification under Rule 23(f)). Also, while the relationship between Plaintiff's counsel and Defendant's counsel was professional, it was often contentious. Defendant hired the defense teams of Kilpatrick Stockton LLP and LeClairRyan, P.C., which included five attorneys that are highly experienced in consumer litigation and FCRA defense, including in class actions. The representation of the Defendant by these attorneys could well have impacted the result in the case.

Given this analysis and the possibility that Plaintiff ultimately will not prevail on his claims at trial or on appeal, the *Jiffy Lube* factors weigh heavily in favor of the adequacy and reasonableness of the settlement.

The Settlement Agreement also provides that Class Members who opt to become an "Inaccuracy Injury Member" and submit valid claims will receive a *pro rata* share of the Net Settlement Fund after clearing of all checks that Reputational Injury Members timely deposited or cashed, and likely in a substantial amount. Class counsel argued that BGC would have furnished a report to an employer regarding these consumers that contained inaccurate, incomplete, or out-of-date information and, by furnishing the report, BGC caused the "Inaccuracy Injury Member" damages. This unique settlement facet provides additional confirmation that the rights of Class Members were at the forefront of counsel's negotiations, and that the settlement should be approved.

If the Court grants preliminary approval, then the Class Members will receive notice carefully explaining the terms of the Settlement Agreement and informing them of their right to object or opt-out. Those class members who believe that their cases are even more valuable or who have actual damage claims in excess of these expected ranges can opt-out and tender those claims on an individual basis. While the degree of opposition to the Settlement Agreement cannot be known with certainty, the lack of any other competing class cases supports the strength of the settlement and the likelihood that it will stand. For these reasons, the opinion of all counsel involved is that the terms of the Settlement Agreement represent a fair, reasonable, and adequate resolution of the claims alleged.

### D.    The Proposed Notices and Notice Plan Satisfy Rule 23.

Following preliminary approval, the class members must be given notice concerning the nature of the settlement and of their rights. Rule 23(e)(1) requires that: "The court must direct

notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) sets forth the contents of a notice to be sent to members of a Rule 23(b)(3) class:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notices to the Settlement Class, which are attached hereto as Exhibits B and C to the Settlement Agreement, satisfy all of these requirements.

As set forth in the Settlement Agreement, to accomplish the contemplated class notice, BGC will generate a list of the class members from its business records. The Settlement Administrator will oversee the administration of the settlement and the notification to class members. The Settlement Administrator will be responsible for mailing the approved class action notices and claim forms to the class members. Further, the Notice Plan provides that actual notice by mail will be effected via information retrieved from those business records. The mailing addresses are then to be electronically checked and updated against the U.S.P.S. National Change of Address database by the Settlement Administrator. Any returned mail will also get a second level of review for re-mailing. Apart from individual mailed notice, the Notice Plan also provides that: (1) a settlement website will be established publishing the Notices and for the purpose of receiving claims; and (2) class members will have access to a telephone service which will answer questions concerning the settlement through a live representative.

As the Manual for Complex Litigation recognizes, mail notice is the ideal method of informing class members of a class settlement where such members can be identified, while notice through an internet website is a supplemental means of providing notice. *See* MCL, §

21.311; *see also Henggeler v. Brumbaugh & Quandahl P.C., LLO*, 2013 U.S. Dist. LEXIS 155235, at \*14–15 (D. Neb. Oct. 25, 2013) ("The court finds that the proposed notice is clearly designed to advise the class members of their rights. The Agreement provides for individual mailed notices to each of the class members. Individual notice is the best notice practicable.").

For these reasons, the proposed Notices and Notice Plan represent the "best notice that is practicable under the circumstances," and it therefore meets the notice requirements of Rule 23. Consequently, the Notices and Notice Plan should be approved by the Court.

## VI.    CONCLUSION

The Settlement is an excellent result considering the contentiousness of the litigation and the lengthy mediation process. The terms of the Settlement, as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through trial and appeal, satisfy the structures for preliminary approval.

WHEREFORE, Plaintiff requests that the Court issue an Order, substantially similar to the Proposed Order filed concurrently with this Motion, that: (1) grants preliminary approval to the Proposed Settlement; (2) approves of the Proposed Notices filed concurrently with this Motion; (3) orders that the Proposed Notices be immediately mailed to Class Members; (4) approves the appointment of the Settlement Administrator; (5) approves Defendant's Class Action Fairness Act notice; (6) and sets the date of the Final Fairness Hearing at the Court's earliest availability, but no sooner than 120 days from the date of the granting of this Motion.

> Respectfully Submitted,
> **KELVIN THOMAS**
>
>
> BY:/s/ Matthew J. Erausquin
>          Of Counsel

Leonard A. Bennett, Esq.

Susan M. Rotkis, Esq.
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd, Suite 1A
Newport News, VA  23601
Telephone:  (757) 930-3660
Facsimile:  (757) 930-3662
Email:  lenbennett@clalegal.com
Email:  srotkis@clalegal.com

Matthew J. Erausquin, Esq.
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Rd, Suite 600
Alexandria, VA 22314
Telephone:  (703) 273-7770
Facsimile: (888) 892-3512
Email: matt@clalegal.com

Dale Wood Pittman, Esq.
112-A W Tabb St
Petersburg, VA 23803-3212
Telephone: (804) 861-6000
Facsimile: (804) 861-3368
Email: dale@pittmanlawoffice.com

James A. Francis, Esq.
David A. Searles, Esq.
John Soumilas, Esq.
FRANCIS & MAILMAN PC
100 S Broad Street, 19th Floor
Philadelphia, PA  19110
Telephone: 215-735-8600
Email: jfrancis@consumerlawfirm.com
Email: dsearles@consumerlawfirm.com
Email: jsoumilas@consumerlawfirm.com

Christopher C. North, Esq.
751-A Thimble Shoals Blvd.
Newport News, VA 23606
Telephone: (757) 873-1010
Email: cnorthlaw@aol.com

Matthew A. Dooley
Anthony R. Pecora
O'Toole, McGlaughlin, Dooley & Pecora Co, LPA
5455 Detroit Rd.
Sheffield Village, OH 44054
Tel: 440-930-4017
Fax: 440-934-7208

Email: mdooley@omdplaw.com
Email: apecora@sheffieldlaw.com

Keith J. Keogh
Keogh Law LTD
55 W. Monroe Street, Ste. 3390
Chicago, IL 60603
Tel: 312-374-3403
Fax: 312-726-1093
Email: keith@keoghlaw.com

Sharon M. Dietrich
Community Legal Services, Inc.
1424 Chestnut St.
Philadelphia, PA 19102
(p) 215-981-3719
(f) 215-981-0434
Email: sdietrich@clsphila.org

*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of February 2015, I filed a true and correct copy of the foregoing on the Court's CM/ECF System, which will send a notice of electronic filing to all counsel of record, including:

Charles K. Seyfarth, Esq.
LECLAIR RYAN PC
Riverfront Plaza - East Tower
951 E Byrd St
Richmond, VA 23219
Telephone: (804) 916-7159
Facsimile:  (804) 916-7259
charles.seyfarth@leclairryan.com

Megan S. Ben'Ary, Esq.
LECLAIR RYAN PC
2318 Mill Road. Suite 1100
Alexandria, VA 22314
Telephone: (703) 647-5933
Facsimile:  (703) 647-5983
megan.benary@leclairryan.com

Cindy Dawn Hanson
Kilpatrick Stockton LLP
1100 Peachtree St
Suite 2800
Atlanta, GA 30309
Email: chanson@kilpatrickstockton.com

John Phillip Jett
Kilpatrick Townsend & Stockton LLP
1100 Peachtree St
Suite 2800
Atlanta, GA 30309-4530
Email: jjett@ktslaw.com

Ross Dallas Andre
Kilpatrick Townsend & Stockton LLP
1100 Peachtree St
Suite 2800
Atlanta, GA 30309-4530
(404) 815-6500
Email: randre@ktslaw.com

_____/s/_____
Matthew J. Erausquin, Esq., VSB No. 65434
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Rd, Suite 600
Alexandria, VA 22314
Telephone:  (703) 273-7770
Facsimile: (888) 892-3512
Email: matt@clalegal.com